## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| Kyra Brown, | |
| Plaintiff, | Civil No. 3:24-cv-01251 (KAD) |
| v. | |
| Department of Mental Health and Addiction Services *et al*., | October 30, 2024 |
| Defendants. | |

## RECOMMENDED RULING ON REVIEW UNDER 28 U.S.C. § 1915

**I.    INTRODUCTION**

This is a lawsuit filed by Kyra Brown, proceeding *pro se*, against the State of Connecticut Department of Mental Health and Addiction Services ("DMHAS"), and Laura Vitale of the Connecticut Office of the Attorney General.  (Compl., ECF No. 1, at 1-2.)  Ms. Brown seeks damages for alleged disability discrimination following her pulmonary embolism diagnosis.  (*Id.* at 2-4.)  She also seeks an apology from DMHAS for allegedly putting her life in danger through failing to accommodate her disability.  (*Id.* at 4.)  She has moved for leave to proceed *in forma pauperis*, or "IFP."  (ECF No. 2.)

When a plaintiff seeks permission to begin a lawsuit IFP – that is, without paying the filing fee – the court ordinarily conducts two inquiries.  First, it reviews the plaintiff's financial affidavit and determines whether she is unable to pay the fee.  28 U.S.C. § 1915(a).  Second, to ensure that the plaintiff is not abusing the privilege of filing a free lawsuit, the court examines her complaint to determine whether it "is frivolous" or "fails to state a claim on which relief may be granted."

28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii).  If the complaint is indeed frivolous or fails to state a claim, the court must dismiss the case.  *Id.*

United States District Judge Kari A. Dooley referred this case to me – United States Magistrate Judge Thomas O. Farrish – to conduct these two inquiries.  (ECF No. 10.)  I have thoroughly reviewed the complaint and the IFP motion.  In the first step of my analysis, I conclude that the motion for leave to proceed IFP should be granted, because Ms. Brown has demonstrated that she is unable to pay the filing fee.  (See discussion, Section III *infra*.)  In the second step, I recommend that the claims in Ms. Brown's current complaint be dismissed with leave to amend. (*See* discussion, Sections IV & V *infra*.)

## II.    BACKGROUND

The complaint alleges the following facts.  On September 5, 2021, Ms. Brown was diagnosed with a pulmonary embolism.  (Compl., ECF No. 1, at 2.)  Her doctor determined that she was "COVID and flu fragile."  (*Id.*)  On or around October 29, 2021, Ms. Brown requested an accommodation from her then-employer, DMHAS, asking that she be permitted to work from home three days per week. (*Id.* at 2-3.)

Ms. Brown says that her doctor supplied "numerous letters" explaining her condition and supporting her telework requests, but DMHAS nevertheless allowed her to work from home only one day each week.  (*Id.*)  DMHAS claimed that teleworking more than one day would "significantly impact [its] operation," even though Ms. Brown had been allowed to work from home for more than three days on several separate occasions.  (*Id.*)  Moreover, her counterparts in other offices were allowed to telework as an accommodation for their medical conditions.  (*Id.* at 3.)  Ms. Brown filed a union grievance, but it failed to resolve the issue.  (*Id.*)  In summary, she says that although "DMHAS claims they accommodated [her] . . . no accommodations were made."  (*Id.* at 2.)

2

Nearly three years later, Ms. Brown filed this federal lawsuit. She asserts that she was discriminated against on account of a physical disability – her pulmonary embolism – and "denied a reasonable accommodation." (*Id.* at 3.) She also suggests that she was retaliated against for having "engaged in protected activity" in "opposition to discriminatory conduct." (*Id.*) She alleges that DMHAS put her "life and health in jeopardy, by going against doctor's orders," and she seeks $300,000 in damages. (*Id.* at 3-4.) She also seeks "an apology for putting [her] life in danger." (*Id.* at 4.) Finally, Ms. Brown sued Assistant Attorney General Laura Vitale as well as DMHAS, but her complaint does not explain what AAG Vitale allegedly did wrong. (*Id.* at 2-3.)

## III.   THE FIRST INQUIRY: IFP STATUS

When a plaintiff files a complaint in federal court, ordinarily she must pay filing and administrative fees totaling $405. See 28 U.S.C. § 1914. District courts may nevertheless authorize commencement of an action "without prepayment of fees . . . by a person who submits an affidavit that includes a statement . . . that the person is unable to pay such fees." 28 U.S.C. § 1915(a)(1); *see also Coleman v. Tollefson*, 575 U.S. 532, 534 (2015) (explaining that plaintiffs who qualify for in forma pauperis status "may commence a civil action without prepaying fees or paying certain expenses").

To qualify as "unable to pay," the plaintiff does not have to demonstrate absolute destitution, *see Potnick v. E. State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983) (per curiam), but she does need to show that "paying such fees would constitute a serious hardship." *Fiebelkorn v. United States*, 77 Fed. Cl. 59, 62 (2007). The United States Supreme Court has said that a plaintiff makes a "sufficient" showing of inability to pay when her affidavit demonstrates that she "cannot because of [her] poverty pay or give security for the costs and still be able to provide [herself] and

[her] dependents with the necessities of life." *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948).

In her application to proceed IFP, Ms. Brown states that she has no cash on hand in a savings or checking account.  (ECF No. 2, at 4.)  She owns no valuable property other than an eleven-year-old car, on which she is still making payments and in which she has negative equity. (*Id.*)  She receives $1,944 in monthly unemployment insurance benefits (*id.* at 3), but this income does not cover her monthly expenses of $2,203.40.  (*Id.* at 5.)  She supports two minor children, but does not receive any child support.  (*Id.* at 3.)   Based on these statements, I conclude that payment of the filing fee "would constitute a serious hardship." *Fiebelkorn*, 77 Fed. Cl. at 62.  Ms. Brown's motion for leave to proceed *in forma pauperis* is therefore **GRANTED**.

## IV.    THE SECOND INQUIRY: REVIEW OF THE COMPLAINT UNDER 28 U.S.C. § 1915(E)(2)(B)

### A.    General Principles of Review Under 28 U.S.C. § 1915

"A motion to proceed IFP comes with a consequence." *Ortiz v. Tinnerello*, No. 22-cv-1318 (AWT) (TOF), 2023 WL 11842871, at *1 (D. Conn. Mar. 22, 2023).  "Because IFP plaintiffs lack 'an economic incentive to refrain from filing frivolous, malicious or repetitive lawsuits' . . . the statute instructs the Court to review their complaints and dismiss certain types of abusive or facially unmeritorious claims." *Emiabata v. Bartolomeo*, No. 3:21-cv-776 (OAW) (TOF), 2022 WL 4080348, at *5 (D. Conn. Jan. 3, 2022).

First, the court must "dismiss the case at any time if the court determines that . . . the action . . . is frivolous or malicious."  28 U.S.C. § 1915(e)(2)(B)(i).  A complaint is "frivolous" when it is entirely without a factual or legal basis.  As the Court of Appeals has explained, an "action is 'frivolous' for §1915(e) purposes if it has no arguable basis in law or fact, as is the case if it is based on an 'indisputably meritless legal theory.'" *Montero v. Travis*, 171 F.3d 757, 759 (2d Cir.

1999) (quoting *Neitzke v. Williams*, 490 U.S. 319, 325-27 (1989)).  "Frivolous" complaints include those that are based on "fanciful factual allegation[s]," *Neitzke*, 490 U.S. at 325, as well as those in which a dispositive defense clearly exists "on the face of the complaint."  *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995).

Second, the court must dismiss a complaint that "fails to state a claim on which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).  A complaint fails to state a claim when it lacks "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Facial plausibility," in turn, requires the pleading of "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  When an IFP complaint lacks this "facial plausibility," it is subject to dismissal.  28 U.S.C. § 1915(e)(2)(B)(ii); *Gordon v. Suffolk Cnty.*, 792 F. App'x 128, 129 (2d Cir. 2020) (summary order).

Third, "the court shall dismiss the case" if it finds that the complaint "seeks monetary relief against a defendant who is immune from such relief" 28 U.S.C. § 1915(e)(2)(B)(iii), and this principle is especially relevant when the defendant is a state or a state agency.  In our federal system, states are ordinarily immune from being sued in federal court for money damages and other retrospective relief.  The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  Although the literal text of the amendment does not expressly bar suits against a state by its own citizens, the Supreme Court long ago held that the amendment and the related doctrine of sovereign immunity imply such a bar.  *E.g., Hans v. Louisiana*, 134 U.S. 1, 20 (1890); *see also Empls. of Dep't of Pub. Health*

*& Welfare, Missouri v. Dep't of Pub. Health & Welfare, Missouri*, 411 U.S. 279, 280 (1973) ("Although the Eleventh Amendment is not literally applicable since petitioners who brought suit are citizens of Missouri, it is established that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State."). Whether brought by one of its own citizens or by a citizen of a different state, "[t]he Eleventh Amendment bars a suit against a state in federal court unless that state has consented to the litigation or Congress has permissibly enacted legislation specifically overriding the state's immunity." *Huang v. Johnson*, 251 F.3d 65, 69 (2d Cir. 2001) (citation and internal quotation marks omitted).

These and other pleading rules are applied liberally in favor of *pro se* plaintiffs. "Since most *pro se* plaintiffs lack familiarity with the formalities of pleading requirements," courts must "construe *pro se* complaints liberally, applying a more flexible standard to evaluate their sufficiency than we would when reviewing a complaint submitted by counsel." *Lerman v. Bd. of Elections*, 232 F.3d 135, 139-40 (2d Cir. 2000). In other words, courts interpret *pro se* complaints "to raise the strongest arguments they suggest." *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (internal quotation marks omitted). Still, even a *pro se* plaintiff must plead a plausible claim. *See Vega v. Univ. of Conn. Med. Ctr.*, No. 3:11-cv-1864 (AVC), 2012 WL 1825381, at *1 (D. Conn. May 16, 2012) ("Although courts still have an obligation to liberally construe a *pro se* complaint, the complaint must include sufficient factual allegations to meet the standard of facial plausibility.") (internal citation omitted)). And even a *pro se* complaint is subject to dismissal to the extent that it seeks money damages from a defendant who is immune from them. *See Zografidis v. Richards*, No. 3:22-cv-631 (AVC) (TOF), 2022 WL 21756775, at *9 (D. Conn. July 6, 2022).

**B.      Application of These Principles to Ms. Brown's Complaint**

When reviewing *pro se* IFP complaints under Section 1915(e)(2), courts examine the factual allegations and consider what theories of recovery they suggest, without limiting themselves to the theories expressly identified by the plaintiff.  *See Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) (noting that, because *pro se* litigants "cannot be expected to know all of the legal theories on which they might ultimately recover," a reviewing court's "imagination should be limited only by [the] factual allegations" when determining what legal claims the complaint suggests).  In *Emiabata*, for example, the plaintiff asserted six specific claims that were all barred by one sort of immunity or another.  2022 WL 4080348, at *10.  But his factual allegations suggested a seventh claim – a civil rights claim under 42 U.S.C. § 1983 – so the Court analyzed that claim as well, even though the plaintiff had not expressly pled it.  *Id.* at *11.

In this case, Ms. Brown did not specifically identify the statutory or common law causes of action under which she wishes to proceed, except for a passing reference to the Americans with Disabilities Act ("ADA").  (*See generally* Compl., ECF No. 1.)  I have therefore considered what claims her factual allegations suggest, and I have identified four:  (1) Failure to provide reasonable accommodations and retaliation in violation of the ADA, 42 USCA § 12101; (2) failure to provide reasonable accommodations and retaliation in violation of Section 504 of the Rehabilitation Act, 29 U.S.C.A. § 794; (3) employment discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*; and (4) violation of her right to equal protection of the laws under the Fourteenth Amendment, actionable through 42 U.S.C. § 1983. But each of these four claims should be dismissed, for the reasons to be discussed below.

1.    *ADA*

The ADA "forbids discrimination against persons with disabilities in three major areas of public life[.]"  *Tennessee v. Lane*, 541 U.S. 509, 516 (2004).  The first of the three is employment; ADA claims arising in the employment context are called "Title I" claims because they are governed by Title I of the statute.  *See id.*  Title II governs "public services, programs, and activities," and Title III covers "public accommodations."  *Id.* at 517.  The ADA also has a Title V, which includes an anti-retaliation provision.  42 U.S.C. § 12203(a).

Ms. Brown claims that DMHAS discriminated against her with respect to a condition of her employment – telework – and accordingly her claim falls under Title I and not under Titles II or III.  The Second Circuit has held that the ADA "unambiguously limits employment discrimination claims to Title I . . . ." *Mary Jo. C. v. N.Y. State & Loc. Ret. Sys.*, 707 F.3d 144, 171 (2d Cir. 2013).  Although some public employees have attempted to assert their claims under the "public services, programs, and activities" provisions of Title II, the Court of Appeals has explained that "a public employee may not bring a Title II claim against his or her employer, at least when the defendant employer employs fifteen or more employees."  *Id.*

The problem for Ms. Brown under the ADA is that the State of Connecticut is generally immune from Title I claims seeking money damages.  In *Board of Trustees of the University of Alabama v. Garrett*, the United States Supreme Court held that state employees could not "recover money damages by reason of the State's failure to comply with the provisions of Title I" because suits seeking such damages "are barred by the Eleventh Amendment."  531 U.S. 356, 360 (2001). "In light of the Supreme Court's ruling in *Garrett*, courts within this Circuit regularly dismiss ADA claims . . . when those claims are brought against states . . . by public employees."  *Collazo v.*

*Conn. Dep't of Soc. Servs.*, No. 3:16-cv-528 (VAB), 2017 WL 4169407, at *4 (D. Conn. Sept. 20, 2017).

The State is also generally immune from Title V retaliation claims under the circumstances presented here.  District courts within the Second Circuit have "consistently extended *Garrett's* holding to ADA Title V retaliation claims – at least to the extent that those claims are predicated on ADA Title I discrimination claims." *Quadir v. New York State Dep't of Lab.*, 39 F. Supp. 3d 528, 536 (S.D.N.Y. 2014) (collecting cases).  In *Pinder v. Connecticut Department of Mental Health and Addiction Services*, for example, the plaintiff alleged that he had been fired in retaliation for requesting leave to treat his post-traumatic stress disorder, and he brought a claim under Title V.  No. 3:20-cv-1918 (JAM), 2022 WL 475162, at *1, 4 (D. Conn. Feb. 16, 2022).  Judge Meyer dismissed his claim because it was "predicated upon an allegation that he was subject to retaliation for seeking to exercise a right to a reasonable accommodation under Title I" and, therefore, was barred by the Eleventh Amendment. *Id.* at *4.

These principles hold true even where, as in this case, the defendant is not the State of Connecticut itself but rather one of its agencies.  "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to 'state agents and state instrumentalities' that are, effectively, arms of a state." *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)).  "Whether an entity is an arm of the state depends on six factors: (1) how it is referred to in its documents of origin, (2) how its governing members are appointed, (3) how it is funded, (4) whether its function is traditionally one of local or state government, (5) whether the state has a veto power over the entity's actions, and (6) whether the entity's financial obligations are binding upon the state." *Walker v. City of Waterbury*, 253 F. App'x 58, 60-61 (2d Cir. 2007) (summary

order) (internal quotation marks omitted).  Applying these factors, courts have held that the State of Connecticut's sovereign immunity extends to DMHAS.  In *Pinder*, for example, the plaintiff asserted his claim against DMHAS rather than against the State as a whole, but the Court dismissed it nevertheless.  2022 WL 475162, at *1.  Other courts have dismissed claims against DMHAS because of its sovereign immunity.  *See, e.g., Owoeye v. Connecticut*, No. 3:14-cv-0664 (VLB), 2016 WL 1089179, at *4 (D. Conn. Mar. 18, 2016) (dismissing claims against DMHAS because it was entitled to Eleventh Amendment immunity); *Volpe v. Connecticut Dep't of Mental Health & Addiction Servs*., 88 F. Supp. 3d 67, 76 (D. Conn. 2015) (finding that a claim against DMHAS was barred "by the Eleventh Amendment and the doctrine of sovereign immunity").

This immunity also extends to officers of state agencies when acting in their official capacities.  "A claim against a government officer in his official capacity is, and should be treated as, a claim against the entity that employs the officer. . . ."  *Mathie v. Frie*s, 121 F.3d 808, 818 (2d Cir. 1997).  Thus, "[t]o the extent that a state official is sued for damages in his official capacity, 'such a suit is deemed to be a suit against the state, and the official is entitled to invoke the eleventh amendment immunity belonging to the state.'"  *Taylor v. Norwalk Cmty. Coll*., No. 3:13-cv-1889 (CSH), 2015 WL 5684033, at *13 (D. Conn. Sept. 28, 2015) (quoting *Rourke v. N.Y. State Dep't of Corr. Servs*., 915 F. Supp. 525, 539 (N.D.N.Y. 1995)).  In this case, Ms. Brown has pled no facts against Attorney Vitale at all, let alone any that would show that she was acting outside her official capacity.  (*See generally* Compl., ECF No. 1.)  The same immunity principles that immunize the State and DMHAS would therefore immunize her as well.[1]

---

[1]     Moreover, even if she had been acting in a non-official, individual capacity, and therefore not immune, it is well established that "there is no right of recovery against individual defendants under the ADA."  *Corr v. MTA Long Island Bus*, 199 F.3d 1321 (2d Cir. 1999).  "[A]n individual is not an 'employer' under the ADA and, therefore, may not be liable for disability discrimination." *Sherman v. Cnty. of Suffolk*, 71 F. Supp. 3d 332, 343 (E.D.N.Y. 2014) (citation omitted).

To be sure, "[s]tate sovereign immunity is not absolute." *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007). A state may, for example, "waive its Eleventh Amendment immunity. . . ." *Id*. Congress may also "abrogate state immunity and subject the states to suit, provided that, first, its intention to do so is 'unequivocally expressed' in the statutory language and, second, the legislation is enacted 'pursuant to a valid grant of constitutional authority.'" *Id*. (quoting *Tenn. v. Lane*, 541 U.S. 509, 517 (2004)). But when neither of these two exceptions apply, the Eleventh Amendment and the principle of sovereign immunity bar federal court lawsuits seeking money damages and other retrospective relief against states, state agencies that function as "arms of the state," and state officers acting in their official capacities. *Huang*, 251 F.3d at 69 ("The Eleventh Amendment bars a suit against a state in federal court unless that state has consented to the litigation or Congress has permissibly enacted legislation specifically overriding the state's immunity." (citation omitted)).

In this case, Ms. Brown has pled no facts that would avoid DMHAS's sovereign immunity. She also has pled no facts that would establish that Attorney Vitale was acting in an official capacity, let alone any facts that, if proven, would establish her liability under the ADA. Because the complaint does not plausibly allege any ADA claim from which the defendants would not be immune, I recommend that Ms. Brown's ADA claim be dismissed.

### 2. *Rehabilitation Act*

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity

conducted by any Executive agency." 29 U.S.C. § 794(a).[2]  Viewed with the required liberality, Ms. Brown's complaint could be read as alleging that she was denied the benefits of telework by a program that may receive federal funds.

If she intended to plead a claim under the Rehabilitation Act, Mr. Brown was required to plead three things.  "To state a *prima facie* claim under . . . the Rehabilitation Act," the plaintiff "must allege: '(1) that [s]he is a "qualified individual" with a disability; (2) that [s]he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to [her] disability.'" *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (quoting *Hargrave v. Vermont*, 340 F.3d 27, 34-35 (2d Cir. 2003)).  A plaintiff can base a disability discrimination claim on "one of three theories of liability: disparate treatment, disparate impact, or failure to make a reasonable accommodation." *Davis v. Shah*, 821 F.3d 231, 260 (2d Cir.2016) (citation omitted).  The Rehabilitation Act also allows for claims of retaliation.  *See, e.g., Dodd v. City Univ. of New York*, 489 F. Supp. 3d 219, 246 (S.D.N.Y. 2020) (analyzing claim of retaliation under the Rehabilitation Act).

Ms. Brown has failed to make out a *prima facie* case of either disability discrimination or retaliation.  For a claim of discrimination based on disparate impact, a plaintiff must demonstrate "(1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral

---

[2]     The question of whether the Rehabilitation Act abrogates DMHAS's sovereign immunity depends on whether DMHAS has accepted federal financial assistance. *See T.W. v. New York State Bd. of L. Examiners*, 996 F.3d 87, 92 (2d Cir. 2021) ("Section 504, which proscribes discrimination against persons with disabilities, only abrogates the immunity of 'any program or activity receiving Federal financial assistance.'" (citation omitted)).  The question need not be resolved here because, as discussed, Ms. Brown's complaint does not state a claim upon which relief may be granted.

acts or practices." *B.C. v. Mount Vernon Sch. Dist.*, 837 F.3d 152, 158 (2d Cir. 2016) (citation omitted).  This is generally done through statistics, such as "offering evidence showing that a neutral policy adversely affects a much greater percentage of people with a disability than it affects people without a disability." *Id.*  Here, Ms. Brown has not alleged that any particular group of people, disabled or otherwise, are affected disparately by the DMHAS's policies.  In fact, Ms. Brown states that her "counterparts" in other offices were given accommodations for their physical disabilities or conditions.  (Compl., ECF No. 1, at 3.)  Because of this, Ms. Brown's complaint does not support a claim of disparate impact.

For a plaintiff to state a claim for disparate treatment under the Rehabilitation Act, "a plaintiff must demonstrate that: '(1) she is disabled within the meaning of the Act; (2) she was otherwise qualified to perform the essential functions of her job, with or without a reasonable accommodation; (3) she suffered an adverse employment action due solely to her disability; and (4) her employer receives federal financial assistance.'" *Kelly v. New York State Off. of Mental Health*, 200 F. Supp. 3d 378, 390 (E.D.N.Y. 2016) (citation omitted).  Similarly, for a plaintiff to state a failure to accommodate claim, the plaintiff must show that "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Rogers v. Wilkie*, No. 3:18-cv-805 (KAD), 2019 WL 764934, at *3 (D. Conn. Feb. 21, 2019) (quoting *Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 183-84 (2d Cir. 2006)).  Importantly, both potential claims require that the plaintiff establish that she is "disabled" under the meaning of the ADA or Rehabilitation Act.  To be "actually disabled" within the meaning of the ADA or the Rehabilitation Act, "a plaintiff must: show that [s]he suffers from a physical or mental impairment; (2) identify

an activity claimed to be impaired and establish that it constitutes a major life activity; and (3) show that [her] impairment substantially limits the major life activity." *Kelly,* 200 F. Supp. 3d at 391 (citation and internal quotation marks omitted).

Even when viewed liberally, Ms. Brown's complaint does not allege facts sufficient to support a claim of disability under the Rehabilitation Act. "Temporary, non-chronic impairments of short duration" are not considered to be substantially limiting disabilities, unless there is evidence suggesting that the temporary condition resulted in a long-term impairment. *Graham v. Boehringer Ingelheim Pharms., Inc.,* 451 F. Supp. 2d 360, 373 (D. Conn. 2006) (citation omitted); *see also Palmieri v. City of Hartford*, 947 F. Supp. 2d 187, 198 (D. Conn. 2013) ("[T]he Second Circuit has determined that, [a] temporary impairment lasting only a few months is, by itself, too short in duration . . . to be substantially limiting." (citation and internal quotation marks omitted)). Ms. Brown does state that she had a pulmonary embolism, but she does not allege any facts which show that her pulmonary embolism limited her major life activities. Her doctor determined that she was "COVID and flu fragile" and thus needed to work from home three days a week (Compl., ECF No. 1, at 2), but being "COVID and flu fragile" is not necessarily a disability. *See, e.g., Sharikov v. Philips Med. Sys. MR, Inc*., 659 F. Supp. 3d 264, 280 (N.D.N.Y. 2023) (finding that the plaintiff failed to establish he had a disability when he did not put forward any facts showing that "having a suppressed or weakened immune or respiratory system that makes an individual vulnerable to COVID-19 is a physical impairment that substantially limited a major life activity"), *aff'd*, 103 F.4th 159 (2d Cir. 2024). Ms. Brown does not allege any facts which establish that being "COVID and flu fragile" limits her major life activities.

The Rehabilitation Act also allows for claims based on "perceived" or "regarded" disability. "A person is 'regarded as' disabled if [she] 'establishes that [she] . . . has been subjected

14

to an action prohibited [by the ADA or the Rehabilitation Act] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.'" *Veldran v. Dejoy*, 839 F. App'x 577, 580 (2d Cir. 2020) (third alteration in original) (quoting 42 U.S.C. § 12102(3)(A)). The "perceived impairment" cannot be "transitory," with transitory being defined as "having an 'actual or expected duration of 6 months or less' – and 'minor.'" *Id.* As stated above, Ms. Brown only alleges that her pulmonary embolism rendered her "COVID and flu-fragile." "[B]ecause COVID-19 is an impairment that is considered transitory, even being regarded as having, or potentially contracting, COVID-19 is being regarded as having an impairment that is transitory – and therefore falls outside the scope of the definition of disability. . . ." *Librandi v. Alexion Pharms., Inc*., No. 3:22-cv-1126 (MPS), 2023 WL 3993741, at *7 (D. Conn. June 14, 2023) (citation and internal quotation marks omitted), aff'd sub nom. No. 23-962, 2024 WL 3872727 (2d Cir. Aug. 19, 2024). Since Ms. Brown has not shown that she had an actual or perceived disability within the contemplation of the Rehabilitation Act, she has not established a *prima facie* case of either disparate treatment or failure to accommodate.

Even if a plaintiff has not alleged that she has a disability under the Rehabilitation Act, "[she] may still succeed on a retaliation claim if [she] plausibly alleges that [she] had a 'good faith, reasonable belief that the underlying challenged actions of the employer violated'" the law. *Sharikov*, 659 F. Supp. 3d at 282 (quoting *Morey v. Windsong Radiology Grp., P.C*., 794 F. App'x 30, 33 (2d Cir. 2019) (summary order)). Claims for retaliation under the Rehabilitation Act are analyzed under "under the familiar 'McDonnell Douglas' burden-shifting framework established for analyzing Title VII, and other, retaliation claims." *Dodd v. City Univ. of New York*, 489 F. Supp. 3d at 246. At the first step, the plaintiff has a burden of making out a *prima facie* case of retaliation. Specifically, she must establish that "(i) [the] plaintiff was engaged in protected activity; (ii) the

alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 148 (2d Cir. 2002) (citation omitted); *see also Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (listing the same factors for an ADA retaliation claim). Though the plaintiff's burden here is *de minimis*, it cannot be met through "purely conclusory allegations." *Dodd*, 489 F. Supp. 3d at 246 (quoting *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985). In other words, the plaintiff cannot meet her burden by stating plain conclusions without some facts or evidence to support those conclusions.

Though Ms. Brown's burden is *de minimis*, she has failed to meet it here. Ms. Brown does meet the first two elements. She alleges that she was seeking reasonable accommodations for her disability, which is a protected activity under the Retaliation Act. *E.g. Weixel*, 287 F.3d at 149. She also alleges that DMHAS was aware of her attempts to seek reasonable accommodations, since it reviewed those requests itself. (*Id.* at 2-3.) However, Ms. Brown has not alleged that "adverse action" was taken against her because of her disability. "To qualify as an adverse employment action, the employer's action toward the plaintiff must be 'materially adverse' with respect to the 'terms and conditions of employment.'" *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (quoting *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)). Ms. Brown has only alleged that she was not granted the full accommodation she requested; instead of three days of telework a week, she received one day of telework a week. She does not state that her regular job duties were affected, that she was subject to discipline or demotion, or that she was terminated from her position. "[A] failure to provide a reasonable accommodation in and of itself does not equate to an adverse employment action." *Berger v. New*

16

*York City Police Dep't*, 304 F. Supp. 3d 360, 368 (S.D.N.Y. 2018); *see also Gallagher v. Town of Fairfield*, No. 3:10-cv-1270 (CFD), 2011 WL 3563160, at *5 (D. Conn. Aug. 15, 2011) ("While courts may consider the underlying conduct of an alleged failure to accommodate, a failure to accommodate, by itself, is not sufficient for purposes of establishing an adverse employment action.").

Even if the denial of reasonable accommodations was an adverse action, Ms. Brown has not shown that this adverse action was causally linked to her requesting those accommodations for a disability. "A causal connection in retaliation claims can be shown either '(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'" *Natofsky v. City of New York*, 921 F.3d 337, 353 (2d Cir. 2019) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015)). Nowhere in Ms. Brown's complaint does she claim that DMHAS denied her request *because* that request was based on her physical conditions. She only states the justification provided by DMHAS for denying her request, which was their claim that "[her] teleworking for more than 1 day, would significantly impact their operation, even though they have allowed [her] to work from home for more than 3 days on at least 5 different occasions." (Compl., ECF No. 1, at 2.) She also noted that other employees with health conditions were given telework accommodations. (*Id.* at 2-3.) This does not demonstrate that the denial of accommodations and Ms. Brown's protected activity were related. Because Ms. Brown has not shown that adverse action was taken against her because she engaged in a protected activity, she fails to state a *prima facie* case of retaliation under the Rehabilitation Act.

*see also Paschal-Barros v. Quiros*, No. 3:21-cv-00698 (SALM), 2022 WL 124544, at *4 (D. Conn. Jan. 13, 2022) (holding that DMHAS is a state agency and not a "person" subject to suit under 42 U.S.C. § 1983.  In addition, "the Eleventh Amendment bars federal courts from entertaining suits brought by a private party against a State and State agencies." *Gyadu v. Workers' Comp. Comm'n*, 930 F. Supp. 738, 746 (D. Conn. 1996), aff'd, 129 F.3d 113 (2d Cir. 1997).  Therefore, any Section 1983 claims brought against DMHAS must be dismissed.

Remaining is the potential claim made against Laura Vitale in her individual capacity.  This claim should also be dismissed, for two reasons.  First, there are no allegations made against Attorney Vitale individually, and it is unclear what – if any – involvement she had in the denial of Ms. Brown's request for accommodations.  "To survive dismissal, the plaintiff must provide the grounds upon which her claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008) (citation and internal quotation marks omitted).  "The plaintiff's factual allegations must be enough to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007).  Ms. Brown's claim against Attorney Vitale does not have sufficient factual allegations to survive dismissal.  Second, "an employment-based disability discrimination claim 'is not actionable' under section 1983." *Apatow v. Town of Stratford*, 651 F. Supp. 3d 573, 584 (D. Conn. 2023) (quoting *Fierro v. N.Y.C. Dep't of Educ.*, 994 F. Supp. 2d 581, 590 (S.D.N.Y. 2014)).  This also applies to "employment retaliation based on disability." *Id.*  Therefore, even if Ms. Brown's complaint contained sufficient factual allegations against Attorney Vitale, dismissal would still be warranted.  For the foregoing reasons, I recommend that Ms. Brown's Section 1983 claims against DMHAS and Laura Vitale be dismissed for failure to state a claim upon which relief may be granted.

### 5. *Apology*

Finally, Ms. Brown asks the Court to order DMHAS to apologize for "putting [her] life in danger." (Compl., ECF No. 1, at 4.) But the Court does not have the authority to order a defendant to apologize. *See, e.g.*, *Koram v. CT Dept of Corr.*, No. 3:23-cv-729 (KAD), 2023 WL 8653979, at *12 (D. Conn. Dec. 14, 2023) ("[T]he Court does not have authority to order [the defendant] to apologize to Plaintiff."); *Miller v. Town of Morrisville*, No. 5:15-cv-00184, 2015 WL 4994175, at *2 (D. Vt. Aug. 20, 2015) ("At the outset, the court notes that it has no authority to order defendants to apologize. . . ."). Even if the Court were able to do so, the Eleventh Amendment "precludes requests for declaratory or injunctive relief for prior violations of federal law." *Rivera v. Erfe*, No. 3:21-cv-316 (KAD), 2021 WL 1601147, at *2 (D. Conn. Apr. 23, 2021). Ms. Brown is seeking an apology which would address alleged wrongs in the past, and would not govern any state official's future conduct. Accordingly, Ms. Brown's request for an order compelling the defendants to apologize for "putting [her] life in danger" should be dismissed. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

## V.  CONCLUSION

For the reasons states in Section III, Ms. Brown's motion for leave to proceed *in forma pauperis* is granted. And for the reasons stated in Section IV, I recommend that Judge Dooley dismiss all the claims in the complaint. I further recommend, however, that the dismissal be without prejudice to repleading. If my recommendation is accepted, this would mean that Ms. Brown could file an amended complaint attempting to cure the defects identified in this recommended ruling. *See, e.g.*, *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). There may be no cure for those defects, but *pro se* plaintiffs are usually given "leave to amend at least once." *Id.* (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir.1999)).

This is a recommended ruling by a magistrate judge. Fed. R. Civ. P. 72(b)(1); D. Conn. L. Civ. R. 72.1(C). If Ms. Brown wishes to object to my recommendation, she must file that objection with the Clerk of the Court within fourteen days. Fed. R. Civ. P. 72(b)(2); D. Conn. L. Civ. R. 72.2(a). If she does not file this objection within fourteen days, she will not be able to assign as error any defect in this recommended ruling. D. Conn. L. Civ. R. 72.2(a). Failure to file a timely objection will also prevent her from obtaining appellate review. *See* 28 U.S.C. § 636(b)(1); *Small v. Sec'y of Health & Human Servs*., 892 F.2d 15, 16 (2d Cir. 1989) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision."); *accord Impala v. U.S. Dept. of Justice*, 670 F. App'x 32 (2d Cir. 2016) (summary order).

*/s/ Thomas O. Farrish*

Hon. Thomas O. Farrish
United States Magistrate Judge

21